THE PEOPLE OF THE STATE OF NEW YORK ex rel. JAMAICA
  WATER SUPPLY COMPANY, Respondent, *v.* THE STATE BOARD
  OF TAX COMMISSIONERS, Appellant.

THE CITY OF NEW YORK, Appellant.

Tax — franchise tax on corporations — power of Supreme Court to
  review action of state board of tax commissioners — rules for
  making assessments for special franchises — certiorari for reduc-
  tion of assessment.

The power conferred upon the Supreme Court to review the action of the
  state board of tax commissioners in valuing a special franchise for pur-
  poses of taxation is wholly statutory. A certiorari proceeding under the
  Tax Law is very like a revaluation of the property, since the court is
  authorized to take further proof and must endeavor to reach a correct
  conclusion as to the proper valuation of the assessed property.

When such a case has been heard before a referee and a determina-
  tion had thereon by the court at Special Term, the Appellate Division,
  in reviewing the decision, must consider the return of the assessing offi-
  cers, including all proofs and exhibits accompanying the same, as well
  as the testimony reported by the referee and his conclusions.

The legislature has not seen fit to prescribe any rule by which the value
  of special franchises is to be ascertained, and it is beyond the province
  of the courts to lay down an exclusive rule of franchise valuation appli-
  cable to all cases, although in many cases the application of the net
  earnings rule would result in a fair and just valuation. There are many
  cases, however, to which it would not be applicable at all.

When a particular assessment comes up for review, the duty of the appel-
  late courts is discharged when they inquire whether the rule whereby
  the value of the special franchise was ascertained was reasonably adapted
  to that end, and, if so, whether it was consistently and correctly applied
  to the facts.

It is only when undisputed facts are before the assessors, and by adopting
  some wrong rule or method they disregard such facts and thus enhance
  their assessments, or when, by adopting a wrong rule or method, they
  include in their assessments some element of value not belonging there,
  that the courts condemn assessments for the use of an improper rule
  or method.

The presumption is that the determination of the assessors is correct,
  and to relieve itself from assessment it is incumbent upon a relator, in
  proceedings by certiorari, to clearly show that the assessment was
  erroneous.

**40** People ex rel. Jamaica W. S. Co. *v.* Tax Comrs. [Oct.,

Statement of case. [Vol. 196.

The net earnings rule contemplates a valuation upon the basis of the net earnings of the corporation which are attributable to its enjoyment of the special franchise. The method is thus applied: (1) Ascertain the gross earnings. (2) Deduct the operating expenses. (3) Deduct a fair and reasonable return on that portion of the capital of the corporation which is invested in tangible property. The resulting balance gives the earnings attributable to the special franchise. If this balance be capitalized at a fair rate we have the value of the special franchise.

Where the net earnings rule is adopted the taxes should be deducted from the gross earnings in order to determine the net earnings of the taxpayer. The deduction to which the taxpayer is entitled on account of taxes, however, does not include the special franchise tax itself.

In order to ascertain the true earning capacity of the property, a proportionate allowance should be made out of the gross earnings on account of the general depreciation of a plant which will ultimately require replacement.

While evidence as to what constitutes a fair and reasonable rate of return in the business of a corporation may properly be taken by the court, in the absence of such evidence it may adopt six per cent as a fair rate for the purpose of calculating the value of a special franchise under the net earnings rule.

The present value of the land occupied by the plant must be taken into account in applying the net earnings rule to the valuation of the special franchise. If this would result in giving a special franchise no taxable value at all, that would be a conclusive reason for rejecting the net earnings rule in such a case and would demand the adoption of some other method of valuation.

The state board of tax commissioners under the statutes as they now stand has no power to reduce the valuation of the special franchises for purposes of equalization; but the Tax Law authorizes the court on certiorari to reduce an assessment for a special franchise upon the ground of inequality, so as to equalize it with other assessments, where it has been assessed at a higher proportionate value than other property on the same roll.

*Held,* that in capitalizing the final returns to provide a sinking fund for unforeseen contingencies, in view of the character of its business the surplus earnings of relator should be capitalized at seven per cent.

*People ex rel. Jamaica Water Supply Co.* v. *State Board of Tax Comrs.,* 128 App. Div. 13, modified.

(Argued April 10, 1909; decided October 19, 1909.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered Octo-

1909.]   People ex rel. Jamaica W. S. Co. v. Tax Comrs.   41

N. Y. Rep.]                Statement of case.

ber 7, 1908, which reversed an order of Special Term confirming an assessment for purposes of taxation against the special franchise of the relator, annulled a determination of the defendant valuing such special franchise, and remitted the matter of such valuation to said board for further consideration and a new assessment.

This is a certiorari proceeding under the Tax Law to review the action of the state board of tax commissioners in fixing the sum of $800,000 as the taxable value of the special franchise of the Jamaica Water Supply Company in the borough and county of Queens on the second Monday of January, 1907. The proceeding was instituted by a petition which alleged that said assessment of $800,000 was erroneous by reason of overvaluation in the sum of at least $250,000; and further that the assessment was unequal because other property in the county of Queens was assessed at 89% of its real value, whereas the state board of tax commissioners after valuing the special franchise of the petitioner determined $800,000 to be the full value thereof. A writ of certiorari was granted upon this petition, reciting overvaluation and inequality as the basis of the petitioner's claim for a reduction in the assessment. In a return to the writ the state board of tax commissioners alleged that when they made the assessment they had before them the report of the relator for the year 1906 filed by the relator at their request. This and all other reports, papers and documents relative to the assessment were made a part of the return. The state board further returned that they also had before them certain facts and information other than those communicated on behalf of the relator; that they had made inquiry, examination and investigation as to the value of the relator's special franchise through agents and employees who had obtained knowledge and information and formed opinion as to the value of the property of the relator, real and personal; and that from such inquiry, examination and investigation, together with the papers and documents already mentioned, the board had decided the value of the special fran-

chise of the relator to be the sum of $800,000. To further elucidate their method of procedure, the state board of tax commissioners also made return that, in arriving at a valuation of the special franchise of the relator, they had considered the value of its real estate in the streets, the value of its right to use the streets, and the cost of the relator's property, the income derived therefrom and other facts going to show the value thereof. They further expressly alleged that they had not included in their valuation any property except such as was situated in, under, above, upon or running through the public streets and public places of the borough of Queens, including the franchise, rights, authority or permission to construct, operate and maintain its foundations, roadbed, substructures, superstructures, wires, pipes, mains and conduits, with their appliances, under, above, upon or through said streets and public places; nor had they included the value of the right of the relator to be a corporation, or the value of the good will of the business carried on by the relator.

Upon the filing of the return, it appearing to the court that testimony was necessary for the proper disposition of the matter, an order of reference was made to Thomas L. Feitner, Esq., to take evidence "as to whether the assessment of the relator's property liable to taxation as a special franchise is excessive, and if so, in what amount, and also whether the said assessment is unequal, and if so, in what amount." The referee was directed to report such evidence to the court with his findings of fact and conclusions of law.

The evidence taken before the referee consisted wholly of testimony adduced in behalf of the relator. No evidence was offered for the state board of tax commissioners. The referee reported as a matter of fact that the full value of the relator's special franchise on the second Monday of January, 1907, as defined by the Tax Law, was $906,053.75; and as a conclusion of law that the assessment made by the state board of tax commissioners in the sum of $800,000 was not erroneous by reason of overvaluation or by reason of inequality, and should, therefore, be affirmed. The Supreme Court at Special Term

adopted all the findings of the referee, and made an order declaring that the assessment of the special franchise of the relator in the borough of Queens in the sum of $800,000 was neither erroneous, illegal nor an overvaluation, and adjudging that the writ of certiorari be dismissed, with costs. This order has been reversed by the Appellate Division on the law and the facts; and the order of reversal adjudges that "the determination of the defendant, the state board of tax commissioners, be and the same hereby is annulled, and the matter remitted to the state board of tax commissioners for further consideration and a new assessment."

The following facts, among others, were found by the referee and the Special Term. The actual value of the relator's tangible property in the streets of Queens county on the second Monday of January, 1907, was $396,244.90. This represented what it would cost to reproduce the property new, less 5% depreciation. The cost of all the land owned by the relator on that date was $25,162.01. The value of this land was $71,018.28. The cost to reproduce three standpipes owned by the relator would be $40,000. The cost to reproduce two pumping stations would be $205,000. The total gross earnings of the relator for Queens county in the year ending December 31, 1906, were $102,055.62. The relator's expenses in that year were $32,005.91, leaving as total net earnings in Queens county $70,049.71.

The referee further found that the aforesaid total net earnings in Queens county amounting to $70,049.71 should be reduced to a final net return of $35,682.62. He arrived at that conclusion by aggregating the cost of reproducing the tangible real estate, the standpipes and the pumping stations already mentioned, calculating 5% thereon (which amounted to $34,363.09) and deducting such 5% from the total net earnings of $70,049.71. Capitalizing the final net return of $35,682.62 at the rate of 7% the referee found the value of the relator's intangible special franchises in the county of Queens to be $509,808.85. This, added to the value of tangible property in the street, made the total value of the

44    People ex rel. Jamaica W. S. Co. *v.* Tax Comrs.    [Oct.,

Statement of case.    .    [Vol. 196.

special franchise upwards of $900,000, a result far in excess of the assessment.

The referee further found that the ratio of assessed value to the actual or full value of the real estate in the borough of Queens in the year 1907 was 89%.

The Appellate Division held in substance, in reversing the order of the Special Term based upon these conclusions of the referee, as follows: (1) That in determining the net earnings of the relator all taxes should be deducted from the gross earnings, including the amount of the special franchise tax to be assessed; (2) that a reasonable and proper fund to be ascertained upon a further hearing for keeping up and replacing the plant, should also be deducted from the gross earnings; (3) that 6% instead of 5% should be allowed as a proper return on the tangible property and deducted in order to ascertain the net earnings and that this percentage should be calculated on the present value of the tangible property instead of upon its original cost; (4) that the surplus earnings should then be capitalized at 6% and the result would represent the fair value of the intangible rights in the streets which, when added to the value of the tangible property in the streets, would represent the whole value of the special franchise; and (5) that the total value of the special franchise should be reduced by 11% in order to equalize the assessment with the assessed value of other property in the same locality.

The other facts, so far as material, are stated in the opinion.

*Edward R. O'Malley, Attorney-General (Edward H. Letchworth* and *James S. Kiley* of counsel), for State Board of Tax Commissioners, appellant. The net earning theory, so called, is not an absolute rule for valuing special franchises, but merely one element among many which the commissioners may consider in exercising their judgment. It, therefore, follows that the valuation made by the commissioners should not be overturned, even if it should be in excess of the result reached by this or any other one theory or rule,

unless it is also proved to be excessive in fact. The commissioners are bound by no rule or theory, but are simply required to exercise their sound judgment and discretion, taking into consideration all the information which they may be able to obtain. (*People ex rel. U. V. C. Co.* v. *Feitner*, 54 App. Div. 217; *People ex rel. R., W. & O. R. R. Co.* v. *Hicks*, 105 N. Y. 198; *People ex rel. E. G. Co.* v. *Barker*, 144 N. Y. 94; *C. S. R. Co.* v. *Common Council*, 125 Mich. 673; *State R. R. Tax Cases*, 92 U. S. 575; *People ex rel. K. F. Ins. Co.* v. *Coleman*, 107 N. Y. 541; *People ex rel. M. S. Ry. Co.* v. *Tax Comrs.*, 174 N. Y. 417; *People ex rel. O., etc., R. Co.* v. *Pond*, 13 Abb. [N. C.] 1.) The relator is not entitled to have special franchise assessment equalized with the assessed valuation of real estate in the same county. (*Otten* v. *M. Ry. Co.*, 150 N. Y. 395, 401; *Heerwagen* v. *C. S. Ry. Co.*, 179 N. Y. 99; *American Guild* v. *Damon*, 186 N. Y. 360; *People ex rel. Spaulding* v. *Supervisors*, 170 N. Y. 93; *M. Nat. Bank* v. *Mayor, etc.*, 172 N. Y. 35; *Matter of Corwin*, 135 N. Y. 245; *People ex rel. R. T. Co.* v. *Priest*, 101 App. Div. 223; *People ex rel. B. Ry. Co.* v. *Priest*, 41 Misc. Rep. 548; *L. Ry. Co.* v. *Comm.*, 20 Ky. L. R. 1509; *C. Ry. Co.* v. *Bd. of Assessors*, 48 N. J. L. 1; *Wagoner* v. *Loomis*, 37 Ohio, 571.) The form of the order of the Appellate Division should be modified in any event so as to remit the matter to the Special Term instead of to the state board of tax commissioners. (*People ex rel. B. Ry. Co.* v. *Priest*, 41 Misc. Rep. 548.)

*Francis K. Pendleton, Corporation Counsel* (*David Rumsey, Curtis A. Peters* and *Addison B. Scoville* of counsel), for City of New York, appellant. The underlying principle, adopted in this case, of determining the value of a special franchise from evidence of earning capacity, is correct. (*People ex rel. M. R. Co.* v. *Barker*, 146 N. Y. 304; *People ex rel. M. R. Co.* v. *Barker*, 165 N. Y. 305; *People ex rel. Powers* v. *Kallfleisch*, 25 App. Div. 432; 156 N. Y. 678; *People ex rel. N. Y. C. H. B. Assn.* v. *Barker*, 31 App.

Div. 315 ; 158 N. Y. 709 ; *New York* v. *Barker*, 179 U. S.
279 ; *People ex rel. D., L. & W. R. Co.* v. *Clapp*, 152 N. Y.
490 ; *People ex rel. C. Gas Co.* v. *Wells*, 193 N. Y. 614 ;
*People ex rel. O., etc., Co.* v. *Pond*, 13 Abb. [N. C.] 1 ; *People ex rel. A. & G. B. Co.* v. *Weaver*, 34 Hun, 321 ; *People ex rel. W. V. R. R. Co.* v. *Keator*, 36 Hun, 592 ; *A. E. Co.*
v. *Ohio*, 166 U. S. 220.)   The question of the proper rate of
capitalization of earnings is a question of fact, governed by no
legal presumption, but susceptible of determination only from
evidence produced.   ( *Wilcox* v. *C. G. Co.*, 212 U. S. 19.)   The
determination of the referee and Special Term in this case
should not have been disturbed. (*People ex rel. M. S. Ry. Co.*
v. *Tax Comrs.*, 174 N. Y. 438.)   The relator is not entitled to
have the assessment of its special franchise reduced so as to
equalize it with the ratio of assessments of real estate other than
special franchises in the same tax district. (*M. Bank* v. *Pennsylvania*, 167 U. S. 464 ; *B. G. R. R. Co.* v. *Pennsylvania*,
134 U. S. 232 ; *M. C. R. R. Co.* v. *Powers*, 202 U. S. 245 ;
*Paddell* v. *City of New York*, 211 U. S. 446 ; *M. Nat. Bank*
v. *Mayor, etc.*, 172 N. Y. 35 ; *People ex rel. M. S. R. R. Co.*
v. *Tax Comrs.*, 174 N. Y. 438.)

*William W. Webb, Corporation Counsel* (*B. B. Cunning-
ham* of counsel), for City of Rochester, intervening.   The pro-
visions of the Tax Law show clearly that it is not the intention
thereof that the valuations of special franchises and real estate
should be equalized. (*People ex rel. N. Y. C. & H. R. R. R.
Co.* v. *Priest*, 169 N. Y. 432 ; *People ex rel. Zollikoffer* v.
*Feitner*, 34 Misc. Rep. 299 ; 63 App. Div. 615 ; 168 N. Y.
674 ; *People ex rel. Chambers* v. *Wells*, 110 App. Div. 336 ;
*People ex rel. Horton* v. *Ferguson*, 120 App. Div. 563 ; *R. T.
Co.* v. *Priest*, 181 N. Y. 300 ; *C. R. Co.* v. *State Board*, 48
N. J. L. 1 ; *L. Ry. Co.* v. *Comm.*, 20 Ky. L. R. 1509.)

*F. H. Van Vechten* and *Warren Leslie* for respondent.
A valuation of a special franchise by apportioning net earn-
ings is arbitrary, misleading, and necessarily includes in the

assessment intangible elements contributing to such earnings not constituting a part of the special franchise. (*People ex rel. Johnson Co.* v. *Roberts,* 159 N. Y. 50.) The court at Special Term adopted an erroneous basis of valuation. (*State of California* v. *C. P. R. R. Co.,* 127 U. S. 1; *Co. of Santa Clara* v. *S. P. R. R. Co.,* 118 U. S. 394.) The right to a reduction of a franchise assessment upon the ground of inequality is statutory. (*Heerwagen* v. *C. S. Ry. Co.,* 179 N. Y. 105.)

*Paul D. Cravath, Walker D. Hines, Joseph P. Cotton, Jr.,* and *Jarvis P. Carter* for receivers of Metropolitan Street Railway Company et al., intervening. It is essential to deduct taxes in order to ascertain the net earnings which the plant of a public service corporation will produce. (*C. U. T. Co.* v. *State Board,* 114 Fed. Rep. 557; *Raymond* v. *C. T. Co.,* 207 U. S. 20; *Wilcox* v. *C. G. Co.,* 212 U. S. 19.) The Appellate Division properly pointed out the necessity for taking into consideration, in addition to current operating expenses, any depreciation allowances that it might be necessary to set aside in order to provide a renewal fund to replace the tangible property of the plant when it shall wear out. (*People* v. *Pond,* 13 Abb. [N. C.] 1; *S. D. L. & T. Co.* v. *National City,* 174 U. S. 739; *Knoxville* v. *Water Co.,* 212 U. S. 1; *S. V. Water Works* v. *City of San Francisco,* 124 Fed. Rep. 574; *M. E. Ry. & L. Co.* v. *City of Milwaukee,* 87 Fed. Rep. 577; *Cotting* v. *K. C. S. Co.,* 82 Fed. Rep. 839; *K. W. District* v. *Waterville,* 97 Me. 185; *C. U. T. Co.* v. *State Board,* 114 Fed. Rep. 557; *Raymond* v. *C. U. T. Co.,* 207 U. S. 20.) The Appellate Division adopted the extreme minimum when it adopted six per cent per annum as an adequate rate of return upon the property, both tangible and intangible, of the relator. (*C. U. T. Co.* v. *State Board,* 114 Fed. Rep. 557; *Raymond* v. *C. U. T. Co.,* 207 U. S. 20; *C. G. Ry. Co.* v. *R. R. Comm.,* 161 Fed. Rep. 925; *People ex rel. O. & L. C. R. R. Co.* v. *Pond,* 13 Abb. [N. C.] 1; *C. G. Co.* v. *City of New York,* 157 Fed. Rep. 849; *Wilcox* v. *C.*

*G. Co.*, 212 U. S. 19 ; *Saratoga Springs* v. *S. G., etc., Co.*, 122 App. Div. 203 ; *L., etc., R. R. Co.* v. *Brown*, 123 Fed. Rep. 946 ; *Brymer* v. *B. W. Co.*, 179 Penn. St. 231.)   The referee erred in allowing a return upon only the original cost, instead of the much greater present value of ·the relator's land. ( *Wilcox* v. *C. G. Co.*, 212 U. S. 19.)

*Henry J. Hemmens* for the New York Edison Company, intervening.   The rule laid down by the Appellate Division in the case of the Jamaica Water Supply Company, to wit, that the surplus earnings after the deductions for maintenance, operating expenses, taxes, depreciation and the allowance of six per cent upon the value of the real estate in use and upon the value of the tangible property in the street should be capitalized on the basis of six per cent to represent the value of the " intangible rights " in the streets is erroneous.   If such rule is meritorious it must apply to every public service corporation, without discrimination and without regard to actual conditions.   As the conditions vary such a rule cannot exist. ( *U. T. Co.* v. *Coleman*, 126 N. Y. 433 ; *W. U. T. Co.* v. *Poe*, 61 Fed. Rep. 449 ; *People ex rel. C. S. Co.* v. *Dederick*, 161 N. Y. 210.)   The return allowed on the tangible property outside of the streets should not be limited to six per cent. (*Saratoga Springs* v. *S. G. Co.*, 122 App. Div. 220 ; *Wilcox* v. *C. G. Co.*, 212 U. S. 19.)   A public service corporation is entitled, and even under legal necessity, yearly to deduct from its earnings a proper fund for replacement or depreciation after deducting expenses for operation, taxes, maintenance, etc., and before its net earnings are capitalized.   (*City of Knoxville* v. *K. W. Co.*, 212 U. S. 1 ; *R. R. Com.* v. *C. T. & T. Co.*, 212 U. S. 414.)   The assessments made by the state board of tax commissioners against the public service corporations are made at full value.   The assessments made in the city of New York upon the same tax rolls for the same years as the assessments made by the state board of tax commissioners are made at less than full valuation.   This inequality should be equalized.·   (*Heerwagen* v. *C. C. T. Ry. Co.*, 179 N. Y. 106.)

*George Zabriskie* and *Joseph P. Cotton, Jr.*, for New York Mutual Gas Light Company, intervening.  *Frank H. Platt* and *Henry W. Clark* for Consolidated Gas Company of New York, intervening.  It was the intention of the legislature which passed the Special Franchise Tax Law that special franchises should bear an equal burden with other real estate, and no greater.  There is nothing in that law which would tend to the conclusion that it was intended that the holder of a special franchise should be deprived of his fundamental right of equalization which the Tax Law provides, and there is no reason to suppose that section 250 of the Tax Law (as to proceedings to correct inequality) does not apply to special franchise assessments as well as all other real estate.  (*People ex rel. M. S. R. Co.* v. *State Board,* 174 N. Y. 417; *People ex rel. B. R. Co.* v. *Tax Comrs.*, 41 Misc. Rep. 548; *People ex rel. R. T. Co.* v. *Tax Comrs.*, 101 App. Div. 223; *Taylor* v. *L. & W. R. R. Co.*, 88 Fed. Rep. 350.)

*Charles A. Collin, John L. Wells* and *George D. Yeomans* for Brooklyn Rapid Transit Company, intervening.  The relator was entitled to have its assessment reduced so that it should be on an equality with the assessments of other real estate on the same tax rolls.  (L. 1896, ch. 908, §§ 45, 250, 253; *People ex rel. M. S. Ry. Co.* v. *Tax Comrs.*, 174 N. Y. 417.)

WILLARD BARTLETT, J.  In the determination of this appeal it is essential at the outset to ascertain precisely what questions are presented for our consideration.  These depend upon the scope and extent of the powers conferred upon the Supreme Court by the legislature in so-called certiorari proceedings to review the action of the state board of tax commissioners in valuing a special franchise for purposes of taxation.  That power is wholly statutory — that is to say, it is derived from the provision of the Tax Law.  Ordinarily, the writ of certiorari whereby the court reviews the judicial or quasi-judicial determination of a board or body of officers

4

brings up for consideration only the evidence on which such board or body of officers acted and the court is called upon to decide whether any error of law or fact was committed in dealing with such evidence. When the action of assessing officers, however, is questioned by a writ of certiorari under the Tax Law, the court is authorized by the statute to take further and additional proof as to the true value of the assessed property, and upon such proof, in addition to the evidence before the assessing officers, it must endeavor to reach a correct conclusion as to what is a proper valuation. A certiorari proceeding under the Tax Law, therefore, is very much like a revaluation of the property which is the subject of assessment.

Although the Tax Law provides that the testimony in these cases must be taken by a referee, who is to report the same with his conclusions of law and fact, it is to be noted that the final determination of the question whether the valuation by the assessing officers was erroneous or not, rests not with the referee but with the court at Special Term, to which he reports the testimony and his conclusions, which in the language of the statute constitute only "a part" of the matter upon which the court is to base its determination. When such a case comes before the Appellate Division, therefore, it is not merely the report of the referee with the annexed proofs, which that tribunal has to review, but it is also the decision of the court at Special Term with all matters upon which such decision is founded — that is to say, the Appellate Division must consider the return of the assessing officers, including all proofs and exhibits accompanying the same, as well as the testimony reported by the referee and his conclusions. Upon this aggregate of papers, the Appellate Division is called upon to determine whether the court at Special Term has properly upheld or overruled the valuation adopted by the assessing officers.

In a case of this kind, the purpose sought to be attained through the state board of tax commissioners in the first instance and subsequently by means of certiorari proceedings

1909.]  People ex rel. Jamaica W. S. Co. *v.* Tax Comrs.  51

N. Y. Rep.]   Opinion of the Court, per Willard Bartlett, J.

at a Special Term of the Supreme Court, is a correct valuation of the particular special franchise in question.  The legislature has not seen fit to prescribe any rule by which the value of special franchises is to be ascertained.  It has declared that certain tangible property is to be treated as constituting part of a special franchise, but this is very far from laying down any exclusive principle of valuation.  That it would be extremely convenient for the state board of tax commissioners to be able to refer to a legislative rule for their guidance is evident; and that those corporations which enjoy special franchises are equally anxious that a definite rule of assessment should be established is evident from the briefs submitted in behalf of the parties who have been permitted to intervene on the present appeal.   Many of them are frankly desirous that the courts should do what the legislature has not done, that is, enunciate some hard and fast rule by which the state board of tax commissioners must be controlled in valuing special franchises for the purposes of taxation.   The Appellate Division in the third department, so far as the present case is concerned, has complied with their wish and has directed the adoption of what is known as the net earnings rule, with certain specified modifications and limitations.

In our opinion it is beyond the province of the courts to lay down an exclusive rule of franchise valuation applicable to all cases.  Of course, if there were only one reasonable method of getting at the true value of a special franchise, it would plainly be the duty of the state board to adopt that method.  It is conceded, however, that there are many reasonable methods, and it is not for the courts to insist that one shall be pursued rather than another so long as the legislature has chosen to leave them all equally open to the assessing officers.   When a particular assessment comes up for review, as in the present case, the duty of the appellate courts is discharged when they inquire whether the rule whereby the value of this special franchise was ascertained was reasonably adapted to that end, and, if so, whether it

was consistently and correctly applied to the facts; in that event, the decision of the Special Term must be approved, even though we may think that some other rule might well have been preferred.

I cannot express my own views on this subject better than by quoting from one of the opinions of Robert Earl, formerly chief judge of this court, written by him as referee in the celebrated litigation involving the constitutionality of the amendment to the Tax Law by which this very tax on special franchises was first imposed. He said: "There is no law or authority which requires assessors, in making assessments, to adopt any certain or fixed rule or method. The only rule for their guidance is the actual value of property to be assessed, and they may avail themselves of all tests of such value within their reach, and of every fact, and all information which in their judgment has any bearing upon such value. If, in assessing these franchises, these officers included with them the value of any other property, thus enhancing their value, their assessments would be illegal. This I do not understand they did. I cannot find that they assessed any values but the special franchises; but in assessing them they considered several incidental matters, such as earning capacity, business advantages, etc., all bearing upon their value. If the local assessors throughout the state are bound to adopt some certain rule or method in reaching assessable values, and if their assessments must fail unless when questioned they can state some certain rule or method by which they were guided, I believe a large share of their assessments would fail to withstand the assaults of the taxpayers. All that such assessors could say when questioned is substantially what these officers have said here, that they have availed themselves of such information as they could obtain as to values and then fixed them according to their best judgment. Assessments when thus made are not illegal. They may be too high, and for that the remedy is by review. It is only when undisputed facts are before the assessors, and by adopting some wrong rule or method they disregarded such facts

and thus enhanced their assessments, or when, by adopting a wrong rule or method, they included in their assessments some element of value not belonging there, that the courts have condemned assessments for the use of an improper rule or method."

In the consideration of this case we are bound to assume at the outset that the valuation of the relator's special franchise as fixed by the state board of tax commissioners was correct. "It is essential that a party assailing the validity of an assessment should make it conclusively appear that the method by which the assessors arrived at the result complained of was incorrect, and that the assessment does not represent the fair value of the property assessed." (*People ex rel. Westchester Fire Ins. Co.* v. *Davenport,* 91 N. Y. 574, 581. See, also, *People ex rel. Osgood* v. *Commissioners of Taxes,* 99 N. Y. 154 ; *People ex rel. Panama R. R. Co.* v. *Commissioners of Taxes,* 104 N. Y. 240, and *People ex rel. Burke* v. *Wells,* 184 N. Y. 275.) In the case last cited Chief Judge CULLEN said that "the presumption is that the determination of the assessors was correct, and to relieve itself from assessment it was incumbent upon the relator to clearly show that the assessment was erroneous." (p. 279.)

The return to the writ of certiorari did not disclose the method whereby the state board of tax commissioners arrived at the sum of $800,000 as a just and true valuation of the special franchise of the relator. It left the Special Term in the dark on that subject. The return, it is true, did state that the board had considered the value of the relator's real estate in the streets and the value of its right to use the streets and the cost of its property and the income derived therefrom as elements in arriving at the valuation of the special franchise. The return also contained certain negative averments, such as the statement that no property was included in the valuation except such as was in, under, above or running through the streets; nor was the value of the right to be a corporation included; nor the value of the good will of the business carried on by the relator. Nevertheless, when the

entire contents of the return together with those of all the papers thereunto attached are taken into consideration it can only be inferred what rule or principle guided the state board of tax commissioners in valuing this special franchise. Section 252 of the Tax Law (now § 292) provides that the return must set forth "the grounds for the valuation made by the assessing officers." Perhaps the present return may be regarded as a technical compliance with this requirement for it does profess to set forth some of the grounds of the valuation in question. It seems to us, however, that such a return is hardly an adequate compliance with the spirit and intent of the statutory requirement. The manifest design of the legislature was that the assessing officers should tell the court *how they got at* the valuation; in other words, that they should disclose the *modus operandi* leading to the result which they reached.

This, as we have said, is not clearly ascertainable from the return itself nor the papers which came to the Special Term with it. The learned referee to whom the case was sent, a lawyer of much experience in tax proceedings, realized this but disposed of the matter in a peculiar way. He assumed that the state board of tax commissioners ought to have valued the relator's special franchise by the application of what is known as the net earnings rule; and applying this rule himself, as he understood it, to the facts and circumstances appearing in the return and the evidence taken before him, he reached the conclusion that the special franchise valued in this manner would exceed the valuation fixed by the board. His findings and conclusions were adopted by the Special Term, which made an order that such valuation was neither erroneous, illegal nor an overvaluation, and dismissed the writ of certiorari. The referee appears to have paid no attention to the proposition sustained by the authorities above cited to the effect that it was incumbent upon the party attacking the assessment to establish some error on the part of the assessing officers in principle or fact. He acted on the assumption that if the assessment were shown to be excessive by the appli-

1909.]  People ex rel. Jamaica W. S. Co. *v.* Tax Comrs.  55

N. Y. Rep.]  Opinion of the Court, per Willard Bartlett, J.

cation of a particular rule its invalidity would thus be
established; which, of course, is not correct, unless that rule
were one which the state board was bound to adopt and follow.
Nevertheless, the referee sustained the assessment because he
thought that the adoption and application of the true rule
would not have entitled the relator to any lower valuation.
The Appellate Division, on the other hand, while approving
the net earnings rule as that which should have been applied
by the state board, thought that the relator was entitled to
more favorable rates of capitalization and return than those
adopted by the referee and the Special Term, and, therefore,
annulled the assessment. In other words, both courts held in
effect that the net earnings rule was the proper method
whereby to assess the value of the relator's special franchise;
but in applying that rule to the case in hand, one court
adopted rates of capitalization and return which upheld
the assessment, while the other adopted rates which over-
turned it.

While, as we have already pointed out, the legislature has
not prescribed any exclusive or hard and fast rule for assess-
ing the value of special franchises, we think that in the case
of this relator and many other corporations similarly circum-
stanced the adoption and application of the net earnings rule
would result in a fair and just valuation. There are obvi-
ously many cases, however, to which it would not be appli-
cable at all. Take, for example, the case of a corporation
enjoying a special franchise which by reason of mismanage-
ment or other causes had yielded no earnings perhaps for many
years; there it might be wholly contrary to the truth to hold
that the special franchise of such corporation had no value
simply because there happened to have been no earnings by
which that value could be measured. Since, however, the
net earnings rule may often be employed with convenience
and justice and doubtless could justly be adopted in the case
at bar, it is proper for us to make some observations in regard
to the manner of applying it and the ascertainment of the
elements necessary for its application. What we shall say on

the subject is suggested by the questions which have been discussed in the numerous briefs submitted by counsel who were permitted to intervene upon the present appeal.

The net earnings rule contemplates a valuation upon the basis of the net earnings of the corporation which are attributable to its enjoyment of the special franchise.   The method is thus applied :

(1) Ascertain the gross earnings.

(2) Deduct the operating expenses.

(3) Deduct a fair and reasonable return on that portion of the capital of the corporation which is invested in tangible property.

The resulting balance gives the earnings attributable to the special franchise.   If this balance be capitalized. at a fair rate we have the value of the special franchise.

The questions which we propose to discuss are presented by the matters of difference in the case at bar between the referee and the Appellate Division.   They are four in number : (1) The referee did not include the relator's taxes for the year in the operating expenses to be deducted from the gross earnings.   The Appellate Division held that such taxes should be deducted in order to ascertain the earning capacity. (2) The referee made no allowance for depreciation of the tangible property employed in the relator's business.   The Appellate Division held that some allowance for depreciation should be deducted from the gross earnings.   (3) The referee held that a return of 5% upon the value of the tangible property employed in the relator's business was a fair return on the money invested in such property, although he conceded that there was no evidence on that subject in the case.   The Appellate Division, also without evidence, held that 6% should be computed as the proper rate of return on money invested in the relator's tangible property.   (4) In valuing the tangible property employed in the relator's business the referee adopted the cost of the land.   The Appellate Division held that the present value of the land, which is much greater, should have been adopted.   These differences, it will be seen,

relate to taxes, depreciation, the rate of return allowable for investments in land, and the time as of which the land should be valued.

(1) As to the taxes, where the net earnings rule is adopted we think they should be deducted from the gross earnings in order to determine the net earnings of the taxpayer. In *Willcox* v. *Consolidated Gas Co.* (212 U. S. 19, 51) the Supreme Court of the United States held that the taxes paid by the defendant even if founded upon an erroneous valuation "were properly treated by the company as part of its operating expenses, to be paid out of its earnings before the net amount could be arrived at applicable to dividends." Certainly the gross earnings of a corporation in any one year are diminished by the amount of taxes it has to pay in that year, and such taxes operate to diminish the net earnings in their precise amount. The earning capacity of a corporation cannot be ascertained without taking them into account. The deduction to which the relator is thus entitled on account of taxes, however, does not include the special franchise tax itself. The Tax Law makes a special franchise real estate for purposes of assessment, and in assessing real estate at its true value the estimated amount of the tax to be paid thereon is never deducted.

(2) In the deduction made by the referee for expenses there is an item of $3,789.37 under the head of maintenance, and it is clear that this does not include a proportionate allowance on account of the general depreciation of the plant which will ultimately require replacement. We suppose that judicial notice may be taken of the fact that in the conduct of many industrial enterprises there is a constant deterioration of the plant which is not made good by ordinary repairs which, of course, operates continually to lessen the value of the tangible property which it affects. The amount of this depreciation differs in different enterprises, but the annual rate is usually capable of estimate and proof by skilled witnesses. No corporation would be regarded as well conducted which did not make some provision for the necessity of ulti-

mately replacing the property thus suffering deterioration; and we cannot see why an allowance for this purpose should not be made out of the gross earnings in order to ascertain the true earning capacity.

(3) Having ascertained the entire net earnings the problem before the referee was how to fix the proportion of such net earnings which were attributable to the enjoyment of the special franchise.   Taking the value of all the relator's tangible property as fixed by him he computed interest thereon at the rate of 5% and deducted the resulting amount from the total net earnings.   " The balance of the earnings," he says, " after making this allowance for return on the investment in tangible property, results clearly from the ownership and use of the special franchise owned by the company."   He gives as a reason for deducting the rate of 5%, in the absence of any testimony as to the proper rate, that it was considered a fair return on the money invested.   The Appellate Division, on the other hand, held that 6% should be allowed as a fair return upon the capital invested in the real estate and other tangible property.   In the case of *Willcox* v. *Consolidated Gas Company*, already cited, the Supreme Court of the United States agreed with the District Court that the complainant was entitled to 6% on the fair value of its property devoted to the public use; and in a case like the present where the net earnings rule is applied, we think that the court below might properly assume, as a matter of general knowledge in the business community, that a prospective return of at least the legal rate of interest, which is 6% in this state, is requisite to induce investors to embark their money in enterprises of such a nature as that undertaken by this corporation.   It is true that this is a question of fact; but the doctrine of judicial notice generally applies only to matters of fact.   While evidence as to what constitutes a fair and reasonable rate of return in the business of a corporation was received in this *Consolidated Gas Co. Case* (157 Fed. Rep. 849, 869), and may properly be taken by the court in certiorari proceedings under the Tax Law if parties see fit to offer it, the court may,

in the absence of such evidence, adopt 6% as a fair rate for the purpose of calculating the value of a special franchise under the net earnings rule.

(4) In valuing the tangible property of the relator, the land occupied by a portion of the plant was an important element to be considered. The referee allowed a return only upon the original cost of such land ($25,162.01) instead of upon its present value ($71,018.28). He argues that the value of the special franchise is not augmented by the increase in the value of the land. Where, however, the value of a special franchise is to be ascertained by the application of the net earnings rule, which involves a capitalization of the surplus, it must be assumed that the present owners are entitled to a reasonable return upon the value of their property now. A stockholder who has recently acquired his stock will probably have paid an increased price therefor by reason of the increase in the market value of the very land in question. The taxes upon this land are based upon the present value, not upon its cost to the corporation when originally acquired. So we think its present value must be taken into account in applying the net earnings rule to the valuation of the special franchise. If, as is suggested might occur in some supposed cases, this would result in giving a special franchise no taxable value at all, that would be a conclusive reason for rejecting the net earnings rule in such cases and would demand the adoption of some other method of valuation. A similar question arose in *Willcox* v. *Consolidated Gas Co.* (*supra*), where it was argued that the basis of valuation of the land occupied by the plant of the Consolidated Gas Company should not exceed its cost to the company, but the Supreme Court of the United States said : " We concur with the court below in holding that the value of the property is to be determined as of the time when the inquiry is made regarding the rates. If the property, which legally enters into the consideration of the question of rates, has increased in value since it was acquired, the company is entitled to the benefit of such increase. This is, at any rate, the general rule. We

do not say there may not possibly be an exception to it, where the property may have increased so enormously in value as to render a rate permitting a reasonable return upon such increased value unjust to the public. How such facts should be treated is not a question now before us, as this case does not present it." (p. 52.)

We now come finally to the question of equalization. The writ of certiorari alleged that the assessment of the relator's special franchise was unequal because other property in the county of Queens was assessed at 89% of its real value, whereas the property of the relator for the purposes of the special franchise tax was assessed at its full value, being 11% higher than the assessment made on other property on the same roll in the same county. The referee and the court at Special Term determined that this allegation was true, finding that the ratio of assessed value to the actual or real value of the real estate in the borough of Queens in the year 1907 was 89%. The referee disregarded this inequality because he thought that even if the assessments were to be equalized at 89%, as demanded by the relator, the valuation of the special franchise fixed by the state board of tax commissioners might nevertheless be sustained. The Appellate Division, however, took a different view and held that 11% of the value of the special franchise as determined by the state board of tax commissioners should be deducted therefrom in order to equalize it with the assessed value of other property.

Under section 250 of the Tax Law (as the sections were then numbered, now section 290, chap. 60 of the Consolidated Laws) any person assessed upon any assessment roll might petition for a writ of certiorari on the ground that the assessment was unequal because it had been made at a higher proportionate value than the assessment of other property on the same roll by the same officers. By section 45 of the same statute (now section 46) it was provided that an assessment of a special franchise by the state board of tax commissioners might be reviewed in the manner prescribed by the

1909.] People ex rel. Jamaica W. S. Co. v. Tax Comrs. 61

N. Y. Rep.] Opinion of the Court, per Willard Bartlett, J.

article containing section 250, and that article was made applicable " so far as practicable to such an assessment, in the same manner and with the same force and effect as if the assessment had been made by local assessors." It is contended in behalf of the appellants that these provisions did not suffice to entitle the relator to have the assessment of its special franchise equalized with the assessed valuation of real estate in the same county because the assessments are not made by the same officers, the valuation of the special franchise being fixed by the state board of tax commissioners while the valuation of other property on the same roll is made by the local assessors. This proposition would be unanswerable were it not for another provision in the Tax Law which was added thereto after the amendment providing for the taxation of special franchises (Laws of 1900, chap. 254). Section 42 of the Tax Law was then amended so as to provide as follows : " The valuation of every special franchise as so fixed by the state board shall be entered by the assessors or other officers in the proper column of the assessment roll before the final revision and certification of such roll by them, and become a part thereof *with the same force and effect as if such assessment had been originally made by such assessor or other officer.*" This provision is re-enacted in the present Tax Law (Consolidated Laws, chap. 60, § 43). When read in connection with section 250 it amounts practically to a direction that for purposes of review upon certiorari the valuation of a special franchise shall be treated as though it had been fixed by the same officers as those who made the other assessments upon the roll. It is difficult to perceive what other effect can be given to the command that such valuation shall " become part thereof with the same force and effect as if such assessment had been originally made by such assessor or other officer."

During the ten years that have elapsed since special franchises were first rendered liable to taxation in this state, the courts with a single exception appear to have acted upon the assumption that a special franchise tax was open to attack by

the statutory writ of certiorari on the ground that such franchise had been assessed at a higher proportionate valuation than other property on the same roll. The Appellate Division in the third department ruled expressly to this effect in the case of *People ex rel. Rochester Telephone Co.* v. *Priest* (101 App. Div. 223). Our attention is called to only one reported case holding the contrary — a decision rendered at a Special Term of the Supreme Court in Albany county. (*People ex rel. New England Telephone Co.* v. *Woodbury,* 63 Misc. Rep. 1.) Irrespective of the reasoning in either of these cases, however, and as matter of authority, preference must be given to the conclusion reached by the Appellate Division that a corporation taxed upon its special franchise is entitled to assail the assessment on the ground of inequality. An examination of the record in the leading cases involving the constitutionality of the tax upon special franchises in this state shows that this court has directly passed upon the question now under discussion. (*People ex rel. Metropolitan Street [Ry. Co.* v. *State Board of Tax Commissioners,* 174 N. Y. 417, 431.)

Those cases were tried before the Hon. Robert Earl as referee. In a series of extremely able opinions, from one of which a quotation has already been made, that learned judge discussed and determined all the important issues presented by that very complicated and interesting litigation. In one of these opinions, discussing a number of general objections to the assessments which had previously been considered, he said: " These franchises were all assessed at what these officers deemed to be their full and true value, while other real estate in the municipalities in which these franchises are operated was assessed by the local assessors at less than its full and true value, and so these assessments will have to be reduced at least so much as will equalize them with the other assessments in the same localities. In New York the assessment of other real estate was sixty-seven per cent of its full and true value; in Kings, sixty-eight per cent; in Queens, eighty per cent; in Richmond, sixty-six per cent, and in Westchester, ninety

per cent." This passage in Judge Earl's opinion was followed by an express finding of fact that other real estate in the city of New York was assessed at only sixty-seven per cent of its actual and true value and by a conclusion of law that to equalize its assessment with the assessments of other real property in the city of New York the relator was entitled to a very large deduction from its assessment.

Here we have an express finding made by a referee in a certiorari proceeding under the Tax Law for which there was absolutely no authority or basis unless that statute permitted the court in such a proceeding to reduce the assessment of a special franchise upon the ground of inequality. The final order in the proceeding followed the findings. That order, it is true, was reversed by the Appellate Division (*People ex rel. Metropolitan Street Ry. Co.* v. *State Board of Tax Commissioners*, 79 App. Div. 183); but when the case came to this court the order of the Appellate Division was in turn reversed and the judgment of the Special Term affirmed. By this affirmance the Court of Appeals necessarily sustained the referee's findings made by Judge Earl to which we have referred and which could only be approved on the ground that under the Tax Law the assessment of a special franchise may be reduced so as to equalize it with other assessments in the same locality.

There seems to be no occasion for any further discussion of a question which appears so clearly to be settled by authority. The state board of tax commissioners and other critics of that portion of the Tax Law relating to special franchises have frequently recommended that the power to reduce for inequality should be conferred upon that board itself instead of being confined in its exercise to the court in certiorari proceedings, but this is a matter in regard to which the legislature alone can grant relief.

The views which have been expressed may prove useful to the assessing officers in all cases where they see fit to apply the net earnings rule to the valuation of special franchises, and will, at all events, be serviceable as a guide to the disposition

of the present proceeding. The order of the Appellate Division reverses the Special Term order affirming the report of the referee and the assessment on the law and the facts and annuls the determination of the state board of tax commissioners and remits the matter to that board for further consideration and a new assessment. There were no controverted matters of fact before the court at Special Term. The reversal, therefore, by the Appellate Division, although nominally based upon questions of fact as well as questions of law, was solely a reversal upon the law. The Appellate Division proceeded upon the assumption, which had also been entertained by the referee and the learned judge at Special Term, that the valuation of the relator's special franchise should be ascertained by the application of the net earnings rule ; and it held that this rule demanded more favorable treatment than the relator had received. Whether the state board of tax commissioners fixed the valuation of the relator's special franchise by means of the net earnings rule or not, the case was determined in both courts below solely on the hypothesis that this rule was the proper one to be adopted in assessing this particular special franchise. We have shown that in thus seeking to fix the valuation certain errors were made because of the failure to make allowances to the relator in the computation which a proper application of the net earnings rule would in our judgment require. To cure these errors it is necessary that the case be sent back to the Special Term for further proceedings in accordance with this opinion. It is not necessary nor would it be proper to send the matter back to the state board of tax commissioners, for those officers, under the statutes as they now stand, possess no power to reduce the valuation of the special franchises for purposes of equalization. As has already been suggested, it would simplify procedure in cases of this character if the legislature should confer that power upon the board.

It may be well to notice one additional point to which no reference has been made in the foregoing discussion. In capitalizing the final returns the referee adopted the rate of

7% to provide a sinking fund for unforeseen contingencies, while the Appellate Division, without giving any reason for the difference of opinion, said that the surplus earnings should be capitalized at 6%. In view of the character of the business of the relator we think the rate adopted by the referee is preferable.

The order of the Appellate Division should be modified so as to remit the matter to the Special Term instead of to the state board of tax commissioners for further consideration and proceedings in accordance with this opinion; no costs in this court to either party.

EDWARD T. BARTLETT, HAIGHT, WERNER, HISCOCK and CHASE, JJ., concur; CULLEN, Ch. J., and GRAY, J., absent.

Ordered accordingly.