Byrne & Cutcheon, for Pennsylvania Steel Co.
J. L. Quackenbush, for New York City Ry. Co.
Dexter Osborn & Fleming, for receiver of New York City Ry. Co.
Dykman, Ocland & Kuhn, for Central Park, N. & E. R. R. Co.
Masten & Nichols, for receivers of Metropolitan St. Ry. Co.

---

PENNSYLVANIA STEEL CO. et al. v. NEW YORK CITY RY. CO.  MORTON TRUST CO. v. METROPOLITAN ST. RY. CO. (two cases). GUARANTY TRUST CO. OF NEW YORK v. SAME.

(Circuit Court, S. D. New York.  February 18, 1910.)

Nos. 2–9, 2–33, 2–149, 3–37.

1. STREET RAILROADS (§ 49*)—LEASES—BREACH OF COVENANT.
    A covenant by the lessee in a lease of a street railroad to pay all taxes "lawfully laid and imposed" upon the property or franchises demised is not broken because taxes imposed have been allowed to become in arrears, where the delay was caused by litigation instituted in good faith by the lessee and afterward by its receivers to effect a reduction of the tax, and its necessity or propriety has been demonstrated by the result.
    [Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 49.*]

2. STREET RAILROADS (§ 58*)—INSOLVENCY AND RECEIVERS—REPAIR OF LEASED LINES.
    Orders granted authorizing receivers for the lessee of a street railroad system to repair certain leased lines to comply with the requirements of the leases.
    [Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 58.*]

3. STREET RAILROADS (§ 49*)—LEASES—CONSTRUCTION.
    Where a covenant by a lessee of street railroad lines to "pay and discharge all taxes, assessments, license fees and percentages of receipts

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which may be lawfully laid or imposed upon the property or franchises hereby demised," or on the lessor companies in respect thereof, has been construed by the parties during nine years to include a special franchise tax created and imposed since the leases were made, such construction will be followed by the courts.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 49.*]

4. STREET RAILROADS (§ 58*)—RECEIVERS—ADOPTION OF LEASE.
The mere payment by receivers for a lessee of a street railroad of whatever the lease requires to be paid to the lessor as compensation for the use and occupation of its property will not amount to a final election to adopt and ratify such lease.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 58.*]

5. STREET RAILROADS (§ 58*)—INSOLVENCY AND RECEIVERS—ADMINISTRATION OF PROPERTY.
Receivers for an insolvent lessee of an extensive street railway system, including a large number of lines, held on long leases, should so far as possible preserve the integrity of the system until its sale.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 58.*]

6. STREET RAILROADS (§ 58*) — RECEIVERS — PAYMENT OF TAXES ON LEASED PROPERTY.
Receivers for the lessee of a street railway system authorized to pay franchise taxes imposed on the lessors of lines included in such system as required by the terms of the leases, which taxes had been in litigation for a number of years prior to and during the receivership, where their validity and the amounts due have been finally adjudicated by the state courts.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 58.*]

7. INTERNAL REVENUE (§ 7*)—INCOME TAX—CONSTRUCTION OF STATUTE.
The federal excise tax imposed on the net income of certain corporations by Act Aug. 5, 1909, c. 6, 36 Stat. 112 (U. S. Comp. St. Supp. 1909, p. 844), was not intended to include insolvent corporations with no net income whose properties are being administered by a court.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 7.*]

In Equity. Suits by the Pennsylvania Steel Company and another against the New York City Railway Company; the Morton Trust, Company against the Metropolitan Street Railway Company; the Guaranty Trust Company of New York against the Metropolitan Street Railway Company; and the Morton Trust Company against the Metropolitan Street Railway Company. In the matter of receiverships.

Various petitions and cross-petitions in the suits above enumerated were argued at the same time, and they are so interrelated that they should be disposed of in a single opinion.

Byrne & Cutcheon, for Pennsylvania Steel Co. and another.
Jas. L. Quackenbush, for New York City Ry. Co.
Dexter Osborn & Fleming, for receiver of New York City Ry. Co.
Brownson Winthrop, for Morton Trust Co.
J. Parker Kirlin, for Metropolitan St. Ry. Co.
Masten & Nichols, for receivers of Metropolitan St. Ry. Co.
Davies, Stone & Auerbach, for Guaranty Trust Co.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LACOMBE, Circuit Judge. The questions presented on this hearing will be considered separately, although not necessarily always in the order of their presentation.

## Petition of Harlem Railroad Company.

This company is the owner of what, without going into details, is known as the Fourth Avenue & Madison Avenue Line, including Eighty-Sixth Street Crosstown Line. The property was leased to the Metropolitan Street Railway Company for 999 years on June 11, 1896, and has since been operated by that company, by its lessee, the New York City Railway Company, and by the receivers of the two last-named companies. The petition prays that receivers "be instructed and directed to elect whether or not they will assume and adopt the [said] lease, or that it be determined that the petitioner may re-enter and repossess its properties therein described," and for general relief.

As to the election whether or not to assume and adopt the lease, it is sufficient to say that as to all leases held by the Metropolitan Street Railway Company this court in the decree of foreclosure inserted provisions which instructed the receivers to take no action, which might be construed as an election, prior to sale. Appeal was taken to the Circuit Court of Appeals, has been argued, and is now under consideration by the appellate court. Under these circumstances, it would be highly indecorous for this court to instruct receivers further on this subject, while that tribunal is considering the propriety of the instructions already issued—unless some most extraordinary and unforeseen contingency should arise, of which there is no suggestion here. This election, however, is of no especial importance now. The gist of the petition is that the covenants of the lease have been already broken, and that lessor is entitled to re-enter. If that is so, mere election to "assume and adopt" would not change the situation.

The alleged breaches of the leases on which petitioner relies are these:

(A) The lease provides that the lessee shall during the term of the lease "pay and discharge all taxes, assessments, license fees and percentages of receipts which may be lawfully laid or imposed upon the property or franchises hereby demised, or any part thereof, or upon or exacted from the lessor in respect thereof, or by reason of the payment of the rent hereby reserved or upon the stock of the lessor by reason of its receipt of the rent hereby reserved." Subsequent to the making of the lease, the state of New York devised and put in force a new form of taxation on public service corporations, referred to in the record as the "special franchise tax." This tax was imposed directly on the lessor road. The lessee at once challenged the constitutionality of this tax, carried the question to the Supreme Court of the United States, was defeated, and paid the tax for the year which it thus brought up. It also questioned the amount of the tax as assessed by the state officials, and for each and every year undertook to review it by certiorari. The multitudinous proceedings thus resulting—for there are many other lessors—were instituted by the lessee (afterwards by receivers) are pending in court and have been carefully at-

tended to. Each certiorari is in the name of the lessor; the lessee and subsequently the receivers retaining counsel and paying all the expenses of litigation. On November 10, 1909, receivers sent to the secretary of petitioner the following letter:

"Dear Sir: As you doubtless know, the special franchise taxes of your company have not been paid in full. Proceedings by certiorari to review the assessment for the years 1901 to 1909 inclusive were begun in the name of your company and are still pending. In view of the recent decision of the Court of Appeals in the Jamaica Water Company Case [196 N. Y. 39, 89 N. E. 581] it is probable that an attempt will be made to collect the unpaid taxes by a sale of the franchises. The receivers have not sufficient funds to make the payments demanded by the comptroller's office or even the amounts which are not in dispute. It is possible that conditions may arise which will involve some conflict of interest between your company and the company of whose property we were receivers. We, therefore, deem it advisable and proper to give you notice to take immediate charge of the proceedings on behalf of your company. Our counsel, Messrs. Masten & Nichols, will facilitate you in so doing."

It is argued that this was a notification that receivers would decline to continue the prosecution of the certiorari proceedings. The receivers contend that no such construction should be put upon their letter. The decision referred to therein settled some of the questions involved in all these certiorari proceedings, making it manifest that the amount of each tax was greatly in excess of what it should have been. This made it probable that the remaining questions might be settled by adjustment with the state and city officials, by mutual stipulations as to the amount of certain items entering into each calculation. Inasmuch as the tax was laid on the lessor, and counsel in charge had not been selected by the lessor, it was thought best to give notice of the situation and afford the latter opportunity to put its own counsel in charge, if it saw fit so to do; the expense of litigation, however, being borne by receivers. The letter is susceptible of this construction, but, even if it were not, the mere sending of it was not a breach of any covenant, so long as receivers actually continued to press the litigation at their expense for the benefit of the lessor.

(B) The special franchise taxes for the years 1901–1909 are unpaid, and it is contended that this circumstance constitutes a breach of the lease. But the record shows that the lessee and subsequently the receivers have instituted and prosecuted proceedings in the state courts to secure a review of the action of the taxing officers and effect such a reduction of the tax as would bring it within what the statute allowed.

These proceedings were not mere devices to delay the payment of just obligations; they were prosecuted in good faith and the recent decision of the Court of Appeals demonstrates their propriety. The lease required the payment of taxes "lawfully laid and imposed" and provided for the payment of such taxes "during the term of the lease." It is thought that a delay merely sufficient to secure relief from the imposition of exorbitant burdens not lawfully imposed does not constitute a breach of the lease. It seems unnecessary to review at greater length the elaborate discussion of this question which is

found in the briefs, in view of what is said infra in disposing of the petition of receivers.

(C) The city having advertised the sale of its lien for unpaid franchise taxes, petitioner voluntarily paid $400,000 to the collector of assessments and arrears to secure a postponement of such sale, and asks that it be forthwith repaid such sum. It is thought this payment was unnecessary. The sale of the liens on property of other lessors was postponed, without payment being made. But further elaboration of this point is unnecessary, in view of instructions to receivers infra.

(D) The lease contains a covenant to keep the demised property in good working order, condition, and repair. The petition does not expressly allege a breach of this covenant; but on the argument it was conceded by all that the property is not now in a proper condition of repair. In view, however, of the instructions given to receivers infra in regard thereto, further discussion of the subject is unnecessary.

The prayer of the petitioner that the $400,000 be immediately repaid, and that it be allowed to re-enter, is denied.

### Petition of Eighth Avenue Railroad Company.

### Petition of Ninth Avenue Railroad Company.

These petitions are for the same relief and upon substantially the same facts, except that no payment has been made by either of these roads to the collector of assessments. For reasons above expressed, in Re Harlem Railroad, they are denied.

### Petition of Receivers.

### Repairs on Harlem Road Lines.

Receivers state that these lines are in bad condition, and that according to the estimates of their engineers $313,900 will be required to restore them to the condition of good repair, which the lease calls for. While a reasonable locus pœnitentiæ may be allowed a person who, holding property under such a lease, has allowed it to deteriorate, he should act promptly when complaint is made. There seems to be no real objection to this expenditure by any one, although upon the argument counsel for the trustee under the second mortgage suggested that it should be ordered only on condition that the lessor should agree to abandon any claim to re-entry for breach of any covenant. All parties—except possibly this lessor—appeared to agree in the conclusion that the integrity of the system should not now be disturbed. It certainly would be promptly disturbed, if the requirements of this lease that the property be kept in "good working order, condition and repair" are not observed. Receivers will take immediate action to make all necessary repairs.

### Petition of Receivers as to Eighth Avenue Repairs.

This is a similar request for instructions; the cost of necessary repairs being estimated at $505,850. It is similarly disposed of.

### Petition of Receivers as to Special Franchise Taxes.

The receivers set forth the details of unpaid special franchise taxes

for the years 1901–1909 showing that the net balance payable, after equalization and deductions in accordance with the decisions of the state courts and including interest, is in excess of $3,000,000. This includes all the lines in the system. The last two years cover the period when the roads were operated by receivers, and it was stated on the argument that they have reserved a sum sufficient to settle for these two years on the reduced basis, but are without means to pay even the reduced amount for the earlier years. They also point out that it is highly important for all concerned that payment be made, if arrangements can be made with the collecting officers to readjust the claims on the basis indicated by the decisions, for two reasons: First, it would stop future accumulation of interest; and, second, payment of tax for each year would operate, as indicated in the Jamaica Water Company Case, to reduce the amount payable for the next succeeding year. They ask for instructions.

As to so much of these taxes as are imposed upon the special franchises of the Metropolitan Street Railway Company itself, it would certainly seem that they should be paid as promptly as money can be procured for that purpose, and it is not understood that there is any serious objection to such a course. The representatives of bondholders, however, strenuously oppose any payment at the present time of taxes imposed on franchises of the leased lines; although the trustee under first mortgage suggests that payment be made, for account of all concerned without prejudice to future adjustment between them, of the taxes for the year 1904.

Counsel for the second mortgage bondholders contends that grave doubt exists whether the special franchise taxes assessed in respect to the property of the leased lines are payable by the lessee; also, that payment now would necessarily involve a final election to adopt and ratify the lease, and thus adversely affect the disposition of possible purchasers to bid upon the foreclosure sale. He does not agree with counsel for the first mortgage bondholders that payment of the taxes of 1904 now would be of any advantage. The first mortgage bondholders ask that the whole matter be postponed until the decision of a specified certiorari proceeding now pending to review the taxes of 1905.

Upon the question whether or not the various leases impose upon the lessee the burden of paying these special franchise taxes, a brief has been filed on behalf of bondholders. It contends forcibly, and with the citation of many authorities, that, since this peculiar tax is a new creation of the Legislature of a sort which did not come into existence until after the leases were executed, it should not be included within the general provisions which require the lessee to pay all taxes, assessments, and charges. The argument is not found persuasive because for nine years or more both parties to each and every lease have practically construed it as imposing the obligation to pay these special taxes upon the lessee.

The mere payment by receivers of whatever a lease requires to be paid to the lessor as compensation for the use and occupation of its property will not amount to a final election to adopt and ratify such

lease. What effect such payment might have on the disposition of possible purchasers at foreclosure sale this court cannot determine. The controlling element of the situation seems to be the necessity for preserving the integrity of the system so long as it remains in the hands of receivers; until foreclosure sale and delivery thereunder discharges them from responsibility they should leave nothing undone which it is within their power to do, and which may be essential to secure the offering of the property for sale as a unitary system.

The situation has changed very much within the past few months. Prior to the final decision of the Jamaica Water Company Case, 196 N. Y. 39, 89 N. E. 581, by the Court of Appeals, no state officer could accept anything less than the full amount of the taxes imposed, however exorbitant they might be. It is thought, as expressed above, that receivers did not make default under any of these leases because they did not undertake in some way to raise the money necessary to pay these exorbitant claims in full, pending proceedings to secure their reduction by the state courts. This court may be right or wrong in such conclusion. If it be erroneous, either or all of the lessor roads which have filed petition can review the decision promptly during the March session of the Circuit Court of Appeals if they so desire. But a failure now to undertake to discharge these taxes by payment of them at the equalized and revised rate indicated as proper by the state courts might very well be held to constitute a breach of the lease. It is certainly reasonable to assume now that there is a final decision by the state court of last resort that the state officers who are charged with the collection of those taxes would be found ready and willing to accept the reduced amounts in satisfaction and discharge.

Receivers, therefore, should take up the matter of adjustment of all these special franchise taxes with the state officers, and, if they succeed in effecting a liquidation on the equalized and revised basis, the court will authorize the issue of receivers' certificates to an amount sufficient, with the money already reserved to cover the last two years, to make up the total sum necessary to be paid, including repayment to Harlem Railroad Company of the $400,000 it has already advanced to the collector of assessments. Should foreclosure sale take the property out of receivers' hands, before such adjustment can be finally effected, they will at least have preserved the property intact, without the disintegration which would necessarily result from making default under these leases.

### Petition of Receivers as to Federal Tax.

Receivers ask instructions as to what action, if any, they shall take under Act Aug. 5, 1909, c. 6, 36 Stat. 112 (U. S. Comp. St. Supp. 1909, p. 844), referring to section 38, which provides for a special excise tax upon net income of certain corporations, joint-stock companies, and associations. The act contains no provisions as to receivers, and it is not thought that Congress intended to include bankrupt corporations with no net income whose properties are being administered by a court. It would seem to be sufficient if at the time fixed for making returns a statement be filed with the proper officer showing that these roads are in the hands of receivers. Whether the various lessor companies

are or are not within the terms of the act as corporations carrying on business and receiving a net income is a question which they will, of course, determine for themselves upon the advice of their own counsel. Whether, if this tax be properly assessed upon them, it should be paid by lessor or lessee, is a question to be determined when it may arise. Such determination will be in no way affected by the present decision, since "practical construction" as to such tax cannot be shown.