(67 Misc. Rep. 474.)

PEOPLE ex rel. BRYAN et al. v. STATE BOARD OF TAX COM'RS.

(Supreme Court, Special Term, Kings County.   April 6, 1910.)

1. TAXATION (§ 496*)—ASSESSMENT—PROCEEDINGS FOR REDUCTION—BURDEN OF PROOF.

On certiorari to review the assessment of certain property and franchises by the state board of tax commissioners, on the ground that it was excessive, the burden is upon relators to show clearly that the board erred in fixing the value.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 906;  Dec. Dig. § 496.*]

2. TAXATION (§ 496*)—ASSESSMENT—REVIEW.

· Where the return in certiorari to review the assessment· of a· special franchise, claimed to be erroneous for overvaluation, did not show the method of making the valuation, but the issues raised by the petition and return made the proceeding one for revaluation, the court will determine the value of the franchise de novo, and reduce its valuation upon finding that it has been overvalued.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 496.*].

3. EVIDENCE (§ 22*)—JUDICIAL NOTICE—GEOGRAPHICAL FACTS.

The court sitting in New York City will take judicial notice that the tunnel of the New York & Long Island Railroad Company parallels the Queens Borough Bridge, and that the only other similar tunnels in operation in the city are the one connecting Manhattan Island and Brooklyn, and the system of tunnels under the North River connecting trunk line railroads having terminals at Jersey City with Manhattan Island.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 28;  Dec. Dig. § 22.*]

4. EVIDENCE (§ 12*)—JUDICIAL NOTICE—GEOGRAPHICAL FACTS—POPULATION.

The court sitting in New York City will take judicial notice that the borough of Queens is sparsely populated, so that there cannot be such a large volume of travel through an underground tunnel running through it as through the tunnel under the East River between Brooklyn Bridge and Manhattan Island.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 12.*]

5. TAXATION (§ 496*)—ASSESSMENT—REVIEW—PROCEEDINGS—SUFFICIENCY OF EVIDENCE.

In certiorari to review the assessment of a special franchise, on the ground of overvaluation, evidence *held* to show that the value of the special.franchise of an underground railroad company, including the tangible property, at the time of the assessment, was $971,150.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 496.*]

6. TAXATION   (§  376*)—ASSESSMENT—FRANCHISES—CONSIDERATION   IN   ASSESSING.

The state board of tax commissioners can only assess a franchise at its value at the time of the assessment, and cannot consider the future prospects of an increased value, unless such potential value adds to its present value.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629, 631;  Dec. Dig. § 376.*]

7. TAXATION (§ 450*)—ASSESSMENT—EQUALIZATION.

The owner of a franchise is entitled to have its assessment equalized on the ratio of valuation in the assessment of property by the local officers of the borough where the franchise is situated, so that, where the state board of equalization determined that property in the borough of Q., where such franchise was assessable, was assessed at 87 per cent. of its value, and the parties, in proceedings to review an assessment by the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

state board, stipulated that the ratio of valuation fixed by it should apply, 13 per cent. of the actual value of the franchise should be deducted for the purpose of equalization, leaving the remainder as the assessment.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 450.*]

8. TAXATION (§ 496*)—ASSESSMENT—REVIEW—QUESTIONS CONSIDERED—QUESTIONS NOT RAISED BELOW.

Where, in certiorari to review an assessment of the franchise of an underground railroad company, the board treated the right to use the streets as still being the property of the company, and the latter claimed to own such right in the petition, and the return did not deny, but rather admitted, the right, the court will not consider whether the right to use. a street has been terminated by operation of law.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 496.*]

Certiorari by the People, on the relation of E. P. Bryan and others, as trustees of the New York & Long Island Railroad Company, against the State Board of Tax Commissioners of the State of New York. Order as stated.

James L. Quackenbush (Charles F. Kingsley, of counsel), for relators.

Edward R. O'Malley, Atty. Gen. (John Hill Morgan, of counsel), for defendants.

BLACKMAR, J. This is a writ of certiorari to review the assessment for the year 1909 of the special franchise of the relators in the borough of Queens. The special franchise was assessed at the sum of $1,500,000, and the relators claim that the assessment is erroneous, by reason of overvaluation, and unequal, in that it was made at a higher proportionate valuation than the assessment of other property on the same rolls by the same officers. The special franchise under consideration is a part of the right granted to the New York & Long Island Railroad Company to construct and maintain a tunnel and operate a railroad therein, commencing in Long Island City and running thence under the East River to a designated point on Mahattan Island. That portion of the tunnel constructed in and under the public streets in the borough of Queens extends from the point where it emerges into Fourth street from a private right of way eastwardly through Fourth street to Van Alst avenue and is 2,045 feet in length. The special franchise in Queens county is valuable only as forming a part of the completed tunnel stretching from Van Alst avenue, in the borough of Queens, to Forty-Second street and Fourth avenue, in the borough of Manhattan, which is 8,861 feet in length.

The relators, who were directors of the corporation on the 1st day of January, 1897, at which time the corporate life of the company terminated, claim to own the special franchise as trustees for the benefit of the stockholders and creditors of the corporation, in accordance with the provisions of section 35 of the general corporation law (Consol. Laws, c. 23). The total cost of the reproduction of so much of the tunnel and railroad of the relators as is under the public streets in the borough of Queens is the sum of $971,150. There has been no operation of the railroad since its construction was completed in 1896, and no income has been received therefrom. An application pursuant

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to the statute was made by the relators for a reduction of the assessment, and, the application having been denied, this proceeding was begun. A writ of certiorari was issued, a return made thereto by the defendants, the proceeding came on for trial at a Special Term of this court, and, upon the trial, evidence upon the issues raised by the petition and the return was offered both by the relators and the defendants. The most important issue litigated upon the trial related to the value of the special franchise. It is undoubtedly incumbent on the relators to show clearly that the defendants have erred in fixing the value of this property at the sum of $1,500,000. As the railroad in the tunnel has never been operated, it is impossible to make use of the net earnings rule in determining its value, and there was not, and in the nature of things could not have been, any claim by the defendants that such rule was adopted or used.

The alternative writ required the defendants to certify to the court the reasons for their decision, the evidence considered by them, all the documents and papers submitted to and filed with them, and any other evidence before them or considered by them in arriving at their decision, a statement of the method, theory, or principle adopted by them in fixing their valuation, and a statement of all other matters material and considered by them in their determination. Their return to the writ states that their determination was based upon an examination, investigation, and inquiry made by and on behalf of the board, and such other facts as are contained in the annual report of the relator for the year 1908, the objections, evidence, and oral arguments presented by the relator on the hearing before the board, the reports of local assessors or other officers, the reports made to the board by its agents, experts, or other investigators, and further states that all such reports, documents, papers, and records are on file in the office of the state board, and are incorporated into and made a part of the return by reference; but no papers, documents, or records were physically incorporated in the return, nor have any of them, except the annual report, been submitted to the court. The return then denies that the relators were aggrieved or injured by the action of the board. It denies that the sum fixed by the board is erroneous, by reason of overvaluation, or unequal, and further denies each and every allegation contained in the petition or writ, except in so far as the same are shown to be true by the return.

In People ex rel. Jamaica Water Supply Company v. State Board of Tax Commissioners, 196 N. Y. 39, 89 N. E. 581, the Court of Appeals has decided that the statute requires the defendants to make return of the modus operandi leading to the result which they reached. This rule was also restated on a reargument of that case in 197 N. Y. 33, 90 N. E. 112. Nevertheless, the return in this case does not show the modus operandi by which the defendants arrived at the determination that the special franchise was worth the sum of $1,500,000, except that it states that the tangible and intangible property was not separately valued; but the valuation of the special franchise, including both the intangible right and the tangible property located in the streets, was valued in gross and as a whole. This proceeding, therefore, does not assume the character of a review of the method used by the de-

fendants in making this assessment, for the method is not disclosed by the return; but the determination of the issues raised by the petition and return is a revaluation of the property assessed, and the function of the court is to determine de novo the value of the special franchise, and, if it be found thereby that it has been overvalued by the defendants, to make its final order accordingly. People ex rel. Manhattan Railway Company v. Barker et al., 152 N. Y. 417, 46 N. E. 875.

It is claimed by the Attorney General, as I understand his contention, that the presumption is that the assessment made by the defendants was correct, and that no evidence was produced that enables the court to determine that such valuation was erroneous. This contention seems to assume that the only way in which the court can determine whether the valuation is erroneous is by the application of the net earnings rule. If we assume that the value of the tangible property was $971,150, and I so decide as matter of fact, it then appears that the defendants have added to this the sum of $528,850 as the value of the intangible right to occupy and use the streets. The relators have shown that this special franchise is a part of the right to construct and operate a tunnel from Long Island City to Forty-Second street and Fourth avenue in the borough of Manhattan; that the railroad has never been operated and under the peculiar conditions which exist cannot be operated at present; that there is no physical connection between the tunnel and other lines of transportation; that the portion of the tunnel in Queens county is about two-fifths of a mile in length, and that it cost nearly $971,150 to construct it without any equipment, whereas street railways in Queens county are constructed at a cost of about $40,000 a mile for double-track roads; that so uncertain was the problem of the earning capacity of the tunnel now extending through the heart of Manhattan Island under the East River to the heart of Brooklyn and connecting at Flatbush avenue with the Long Island Railroad system that such tunnel was exempted from taxation; and that the tunnel in question parallels the Pennsylvania tunnel, and, as I may notice judicially, also the Queens Borough Bridge, which necessarily affects the prospect of its profitable operation.

The court may take judicial notice that the only other tunnels of a like nature in operation in the city of New York are the one referred to, connecting Manhattan Island and Brooklyn, and the system of tunnels under the North River connecting the great trunk railroads having their terminals at Jersey City with Manhattan Island. Judicial notice may also be taken of the fact that the borough of Queens is sparsely populated, and that therefore there can be no volume of travel through this tunnel which will approximate that passing under the East River between the borough of Brooklyn and Manhattan Island. Evidence was also introduced by the defendants that the relators have attempted to sell this tunnel to the city of New York for the sum of $7,239,476.50, which includes the actual cost of construction with interest to the time of the offer, its real estate, and an additional sum of $374,976.05, which represents the capital stock and the amounts of the judgments obtained against the company. Both parties have treated this as competent evidence bearing upon the value of the property.

All these facts are evidence which may be considered by the court in determining the value of the intangible right, and the contention of the defendants that there is no evidence on which the court may determine the value of the franchise is therefore without force.

The petition in the tenth paragraph alleges that the value of the special franchise did not exceed the sum of $971,150, which was the actual cost of construction, and that therefore the intangible right had no taxable value whatever. The return denies this allegation. Upon the issue thus raised the question of the value of the special franchise is to be determined de novo, and I find upon the record that the actual value of the special franchise, including the tangible property, at the time of the assessment, was the sum of $971,150. It is possible that the future development of greater New York and the growth of population in Queens county and Long Island may create a substantial value in this intangible right, and that these future prospects may be sufficient to induce the investment of capital necessary to construct the tunnel with a fair prospect of future profits; but the defendants had no power to assess the property at any but its value at the time of the assessment. If the future prospects were such that they would add to its present value, they might be taken into consideration, just as the value of vacant land may be influenced by a possibility of future use; but there is no evidence before the court on this subject. Everything in this direction rests in vague conjecture. Neither do I think that the offer to sell the tunnel to the city of New York at a sum greater than the cost of reproduction of the physical structure by the amount of the capital stock of $100,000 and the judgments recovered against the corporation then owning the tunnel warrants any greater valuation of the special franchise than the cost of reproduction of the physical structure.

The question of inequality may be easily disposed of. The parties stipulated in open court that for the purpose of determining this question the ratio of valuation fixed by the state board of equalization should apply, and that such board had determined that property in the borough of Queens was assessed at 87 per cent. of its value. In the case of People ex rel. Queens Borough Gas & Electric Company v. State Board of Tax Commissioners (recently decided by me) 123 N. Y. Supp. 592, I have determined that the relator was entitled to have the assessment equalized with the ratio of valuation in the assessment of property by the local officers in the borough of Queens. The same rule should be applied in this case. The valuation of the special franchise of the relators in the county of Queens is therefore fixed at the sum of $971,150. Thirteen per cent. of this sum should be deducted for the purpose of equalization, and the assessment fixed at the sum of $844,900.

The question is suggested whether the corporate powers, including the right to occupy and use the streets, formerly belonging to the New York & Long Island Railway Company, have not been terminated by the operation of the self-executing provisions of section 5 of the railroad law. But this question does not appear to be raised upon the record. The defendants levying the assessment have treated this property as belonging to the relators. Ownership of it is claimed by the

relators in the petition, and the return does not in terms deny but rather seems to admit this claim. I therefore do not think it proper or necessary that this question be considered or determined by me.

Ordered accordingly.