## SPENCER v. BABYLON R. CO.

### (District Court, E. D. New York. May 18, 1916.)

1. RECEIVERS ⬦⬰153—WAIVER OF OBJECTIONS—POWER OF COURT TO DETER- MINE VALIDITY—RAILROADS.

Although a railroad company, by failing to take the steps prescribed by statute, has lost the right to question the validity of tax levies against its property, where its affairs are being administered by a federal court of equity through a receiver, that court has power to determine the validity of the claim for taxes, and if it appears that they were so erro- neous in the methods of assessment, imposition, or computation as to be fraudulent to direct that only the proper amount shall be paid from the estate.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 276, 277; Dec. Dig. ⬦⬰153.]

2. RECEIVERS ⬦⬰153—RAILROADS—INSOLVENCY AND RECEIVERS.

Taxes levied upon the property and franchise of a railroad company whose estate was being administered in equity *held* so excessive, as com- pared with those levied on similar property of other companies, that their allowance in full would operate as a fraud on other creditors, and to re- quire the court to reduce the same to a just amount.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 276, 277; Dec. Dig. ⬦⬰153.]

In Equity. Suit by William B. Spencer against the Babylon Rail- road Company. In the matter of claims for taxes. Claims allowed in part.

Percy L. Housel, of Riverhead, N. Y., for treasurer of Suffolk County.

Samuel P. Hildreth, of Amityville, N. Y., for Village of Amityville.

Haff & Farrington, of Jamaica, for Village of Babylon.

Arthur Carter Hume and Robert D. Ireland, both of New York City, for Babylon R. Co.

CHATFIELD, District Judge. The Babylon Railroad Company was organized in the year 1908 and has never paid dividends. In fact, its operations show a deficit each year. The present owners and officers assert that this deficit accords with an actual shortage in its net earnings, but admit that the problematical sale value of the prop- erty (including the intangible asset of franchise rights and current improvements) makes it impossible to decide whether this shortage represents an actual depreciation in total value.

Conditions were such that in the year 1911, this court appointed a receiver in a suit in equity, who was in possession of the property till December 12, 1913. On that day an order was made allowing the Babylon Railroad Company to pay its general creditors, to wind up the proceedings of the receivership, and upon consent of all the par- ties to turn the property back to the company itself, subject to any further order which might be found necessary in the action, and sub- ject to the right to take the property again into the possession of a receiver, if the company did not fulfill the terms of its proposed set-

tlement and pay the debts for which the property would otherwise
have to be sold.

, The questions have been disposed of as to all these claims with the
exception of those relating to taxes. It appears that taxes have been
assessed by the village authorities of the villages of Babylon and
Amityville and by. the town and county authorities of Suffolk county.
The company have paid none of these taxes since its beginning, except
in the case of the village of Babylon, when, under application to this
court at the time of a threatened sale for the payment of taxes, the
company volunteered to pay the tax bills for 1909 and 1910, as a con-
dition, for a further adjournment of the application to allow the road
to be sold for the payment of taxes due.

. [1] The objection has all along been urged by the villages and by
the county of Suffolk that the federal court had no jurisdiction to con-
sider the granting of any relief against either the amount of the as-
sessment or the claims for taxes, inasmuch as the company never re-
sorted to its legal remedies by certiorari or otherwise, and never
while the receiver was in possession, appeared before the grievance
committee of the assessors to protest against the amount of the assess-
ment.

It is admittedly impossible for the company, in the courts of the
state, to now protest against the validity or amount of these taxes,
or to seek to have the same reduced. But inasmuch as this court is
proceeding to pay, in the equity action, the obligations due from the
defendant, and (either by the sale of receivers' certificates or from the.
railroad's funds) to see that these priority claims are taken care of
before the court loses its jurisdiction over the defendant, it appears
that the amounts due to the state and to the villages as taxes can be
considered by the court, and if not founded upon assessments in
accord with the facts, or if so erroneous as to be fraudulent in the
method of imposition or in computation, this court has the authority
to direct that no more than the proper amount shall be paid.

[2] The defendant excuses itself for its failure to make any pay-
ment on account of these taxes by presenting letters from the various
collectors and tax officials showing that in some instances the officers
cannot ascertain in what way the tax was computed. Under these
circumstances, the railroad, when it has attempted to secure bills
showing the assessments and the amount of taxes due, has found dis-
agreement or inconsistencies between one set of figures and the other.

The defendants seek to excuse their laches, while, on the other
hand, the county and villages of Babylon and Amityville all contend
that the defendants have used these matters merely as an excuse to
cover up their absolute failure to seek legal remedies under the state
law, or to protect themselves from the imposition of penalties and the
collection of interest. The defendants argue that, so long as they
could not find the exact amount upon which interest could be figured,
they are justified in not paying either a part of the principal or any
interest and penalty.

In so far as this raises the same question as is raised by the query
as to what is the proper tax, the defendants would seem to be jus-

tified. But in so far as the defendants, when in the hands of the receiver, and since as well as before that time, have had the benefit of the amount which actually should have been paid as taxes, and when they have not attempted to attack the amount of these taxes until they were brought up in the present proceeding, the defendant company cannot object legally nor equitably to payment, upon such amount as may be actually found due as taxes, of the rate of interest provided by law for a mere failure to pay a tax. Any additional penalties or expenses should not be exacted and cannot be held valid.

The county of Suffolk has assessed the real property owned by the defendant upon the basis of $7,022 per mile of single track. Comparison with the rail and tracks of the Huntington Railroad, which intersects the property of the Babylon Railroad, and with the Suffolk Traction Company, which runs through a considerable portion of Suffolk county somewhat east of the properties of the Babylon Company and of the Long Island Railroad Company, indicates that either the valuation upon the land of those companies has been placed too low, or that excessive valuation was placed upon that of the Babylon Railroad Company, and that the taxes are therefore unjust.

The defendant has offered testimony as to the property of the Long Island Railroad Company, close by the route of the Babylon Railroad Company. It has pointed out that the Babylon tracks are made of lighter rails, with smaller ties, designed for a different purpose than that of the Long Island Railroad Company; that it has not so many fills, and no concrete bridges or other structures, such as occur in the line of each one of the other companies; and that, both from the standpoint of the original cost as well as the estimated cost of replacement, the defendant company is worth much less than any one of the other three per mile. These values enter also into the question of the amount fixed for the assessment of a special franchise, but that question will be discussed separately.

In the case of the assessment against the Long Island Railroad Company, it is shown that the property of the Long Island Railroad Company averages about eight acres per mile, while that of the Babylon Railroad Company averages less than one-third as much. But the real estate assessment of the Long Island Railroad Company is at the average rate of $13,000 per mile for double track, switches, and all other property.

The assessment of the Long Island Railroad Company is justified upon the theory that the road has been there since the middle of the nineteenth century, that its existence is the principal source of increase in value of the lands and properties of the towns through which it passes, and that the amount of real estate which the Long Island Railroad Company owns is not in direct proportion to the value of that property as land. All these bear upon the question as to whether the Long Island Railroad Company tax is too small. But in considering that the benefit to the community increases the value of the property (including its own) in the community equally, and that a railroad company is not supposed to receive a bonus upon its real estate (for the value which it imparts to the locality) by a reduction

of the amount which it as a landowner shares in the expenses of the community, it is difficult to reconcile the theories of the assessors.

The property of the railroad as property is worth what the land would bring if available for sale under the same circumstances as those under which the property is used for a particular purpose. If a factory brings business to a community, and should move to another factory site, the real estate tax upon the new site would certainly not be reduced upon the theory that the land was worth less, because the factory was instrumental in greatly increasing the total values of the neighborhood.

But we can only consider the amount by which this company appears to be made to pay more than its share of the burdens of the community; that is, in which the land is taxed at a greater amount than the average values for the neighborhood. The defendants have offered certain figures showing that the general rate of taxation for land is so much per acre, and viewing the increase of value for railroad construction, as estimated by the taxes against the Long Island Railroad Company, the Huntington Company, and the Suffolk Traction Company (which certainly is at least as expensive as that of the Babylon Railroad Company), it would appear that the real estate tax is so inequitable that no flat rate can be fixed by way of comparison.

It cannot be held that the Babylon Railroad Company should on this account be excused from a charge for taxes. It should pay the tax rate as a claim in this proceeding in favor of the county, for its proper share of the real estate taxes levied approximately upon that sum per mile of track, which bears the proportion to $13,000 which $2 \frac{3}{16}$ bears to 8. This is based upon the figures showing that the Long Island Railroad Company is taxed at the rate of $13,000 per mile and occupies 8 acres to the mile, while the Babylon Railroad Company occupies $2 \frac{3}{16}$ acres and hence is paying more than its share when assessed at $7,022 per mile. The total will be divided to each district in proportion to the assessors' division each year among those districts.

It is also contended that the real estate tax for the year 1912, as assessed by school districts, is void, in that it is not based upon an apportionment of valuations. But the various parcels making up the apportioned valuation were set forth and taxed, and the result is correct, as the total was set forth in each school district, instead of an apportionment of the entire valuation for each district after the total of the roll had been completed. Before the law was amended in 1912, the apportionment was to be made after the completion of the roll, and the way this tax was assessed in that year actually complied with the law in effect, even though the statute was not specifically followed in making up the tax. This objection is therefore overruled.

In the village of Babylon, the taxes for 1909 and 1910, as has been said, were paid in order to obtain further adjournments. It now appears that the amount due for these taxes was apparently a mistake of fact in copying the tax bills from the rolls. As these payments were made in accordance with the direction of the court, and in order to obtain a further adjournment, it would certainly be inequitable to

hold that the company could not point out the mistake in the total amount due, and have that payment credited upon all of the taxes for which they are liable.

The taxes in the village of Amityville seem to be open only to objection in the way the real estate tax was assessed and will be treated accordingly.

This leaves only the question of the franchise tax, and again comparison is made with the franchise tax paid by the Suffolk Traction Company, in order to show that a more valuable property was not assessed for as much as that of the Babylon Railroad Company. Here it is impossible to draw any conclusion from the rate of assessment of the Suffolk Traction Company, except in so far as it generally shows that the valuation was not based upon net earnings. The road, which had no net earnings, in the ordinary sense, was assessed higher than that which was paying dividends. In the case of People ex rel. Railroad Co. v. Tax Commissioners, 203 N. Y. 119, 96 N. E. 435, and People ex rel. Jamaica Water Supply Co. v. State Board of Tax Com'rs, 196 N. Y. 39, 89 N. E. 581, it was held that the rule of estimating franchise value by net earnings, or of concluding that no franchise value existed, if no net earnings at all could be shown, was not in all cases satisfactory, but in most instances defined the best test. But in cases where, even in the absence of net earnings, the franchise would have a large sale value, there could be no question that the net earnings rule would not be satisfactory.

In the present case the property has been sold for much less than its replacement value, and the value of the franchise in the sense of an abstract right is extremely problematical. The various town authorities have in some instances failed to make their total valuation as small as the state equalization, but it is evident that the amount fixed by the state board of equalization for the franchise tax was too large. Each of these assessments, including the equalization by the state, was based upon the guess of the assessors, without knowledge of the lack of earnings, and without any actual basis for determining what price might be obtained for the property. It would seem that the tax should have been limited to the cost of replacement, unless some intimation of the possibility of securing a market price for the mere right to operate the road could be shown. On the basis indicated, a fair valuation of the franchise for each year up to the year 1915 would seem to be in the neighborhood of $23,000. The claim of the assessors to a tax based upon this amount should therefore be allowed.

One other item is that of the car barn in the village of Huntington, which is shown to be of smaller value than other structures which are assessed for less. This assessment, if placed at $250, would seem to be in accord with the other valuations, and, as before, the claim for tax based upon this valuation will be allowed and ordered paid.

Claims for taxes over the amount indicated will be rejected, as either erroneous or based upon valuations which would involve unequal payments to the other creditors.