THE PEOPLE OF THE STATE OF NEW YORK ex rel. NEW YORK TELE- PHONE COMPANY, Appellant, against MARK GRAVES et al., Con- stituting the State Tax Commission, Respondents, and CITY OF NEW YORK, Intervener, Respondent.

Third Department, July 8, 1954.

*Frank A. Fritz, Ralph W. Brown, Eric B. Nelson* and *John M. Farrell* for appellant.

*Nathaniel L. Goldstein, Attorney-General* (*Edward J. Grogan, Jr., Wendell P. Brown* and *George A. Radz* of counsel), for respondents.

*Adrian P. Burke, Corporation Counsel* (*Timothy F. Cohan* of counsel), for intervener-respondent.

BERGAN, J.   We deal with a point of statutory construction in almost pure form in an area substantially untouched by prior judicial exploration.   The problem has two elements; but both relate to provisions of the Charter and Administrative Code of the City of New York.   The Charter was adopted by a city refer-

endum of 1936 and the code was enacted by chapter 929 of the Laws of 1937. Both became effective January 1, 1938.

One of the alterations introduced by these enactments was a change in the year used by the city for taxation and budget purposes. In place of the calendar year, a fiscal year from July 1st to June 30th was to be used. The Charter (§ 952) provided that the " first fiscal year as established by section one hundred eleven shall commence on the first day of July, nineteen hundred thirty-nine ".

For the purpose of adapting the real property assessment rolls to this change in the tax year it became necessary as a practical matter to do one of three things; either continue the 1938 assessment rolls for the first six months of 1939; or make a separate six-month assessment between the end of the last calendar year system, December 31, 1938, and the beginning of the new one on July 1, 1939; or pick up the six-month period with the beginning of the new fiscal year and have the first assessment then made operate retroactively for the six-month period.

The plan reflected in the Charter and the code was a combination of the first two, designed to minimize the task of the assessors. The assessments made for 1938 were to continue during the first six months of 1939 unless the character or condition of the property (other than its value) changed; if the character or condition changed, it would be reflected in the tax roll applicable to the six-month period.

The statutory language to effectuate this policy is found in the Charter (§ 952, subd. d) and in the Code (§ J41–4.0). The Charter provision with reference to the six-month period is that " The tax rate shall be fixed upon the assessed valuations as they appear upon the assessment-rolls delivered to the council in March, nineteen hundred thirty-eight." The code provision is that except in the case of structures destroyed in whole or in part, or of alterations not completed before October 1, 1938, or " a change " on that date " of the taxable character or status of real estate " the section does not authorize " the revaluation of any taxable real estate for taxation purposes during the six months' fiscal period ". A " mere change " in value is not to be deemed such a change.

That the six-month period was to be treated as a separate unit for the purpose of assessments on real estate in the city is, therefore, perfectly clear, not only from the authorization to the city assessing authorities to reflect certain kinds of changes in the assessments effective during this period; but also because an

entire and distinct assessment roll was to be set up for the six-month period under the requirements of subdivision b of section J41–4.0 which directed the city tax commission for this period to " prepare supplemental books of the annual record of assessed valuations and supplemental assessment-rolls ". The city commission was relieved, merely, from reflecting changes of value alone.

The State Tax Commission's authority to make special franchise assessments rests on the Tax Law (§ 45; L. 1916, ch. 334), which provides that the Tax Commission shall fix and determine the valuation of each special franchise subject to assessment in each city, town or village. This is to be done " annually ", a time direction to which we shall revert.

The succeeding sections in the statute, sections 45-a and 45-b (L. 1916, ch. 334, as amd.), set forth in detail the course of proceedings to be followed by the Tax Commission as to hearing, notice and determination. Section 45-c (L. 1916, ch. 334, as amd.) provides the method by which the determinations of value of special franchises shall be transmitted to local assessment officers who are directed by the statute to enter such evaluations " in the proper part of the assessment-roll ", whereupon such valuations " become a part thereof with the same force and effect as if such assessment had been originally made by such assessors."

For the year 1938 there had been imposed against the relator New York Telephone Company certain assessments on special franchises within the five boroughs of the city of New York duly set forth in the city's assessment rolls. The taxable character or status of the special franchises had not changed on October 1, 1938, from what they had been the year before, and were, in the language of the company's brief " identical ", which is undisputed; but there was some " relatively small " increase in value of the franchises.

The Tax Commission found higher values for the company's special franchises in each of the boroughs, and following the procedural requirements of the Tax Law itself in due course transmitted to the city these values as determined for the six-month period from January 1 to June 30, 1939. The notice which the commission gave to the company of the earliest steps taken in the process of fixing the valuations, i.e., the " Notice of Tentative Special Franchise Valuation and Tentative Rate of Equalization " stated that the assessments were then in the process of being determined " For Six Months Fiscal Period from Janu-

ary 1, 1939 to June 30, 1939 '' and while the final determination dated January 30, 1939, did not recite that it was for the short period, there is no doubt that it was so intended and so understood, because of the amounts of the determinations of value recited; and because the final determination in procedural and time sequence clearly related to the tentative one.

The problem presented on this aspect of the case is not whether the Tax Commission had power to fix special franchise valuations to be reflected in the assessment rolls applicable to the six-month period, because clearly it had that power, shared as well by the city's tax commission. The question is, rather, whether because the power of the local city assessing officers to change valuations '' of real estate '' was limited to cases of physical or status change, the limitation extended over to the State authority and to assessment of a kind of property which is not '' real estate ''.

No such limitation has been found upon the power of the Tax Commission in the Tax Law, literally or by reference, which will support the relator's argument in this respect. The procedural requirements to be followed by the Tax Commission rest on entirely different statutory implementation than those of any local assessing officers. The only support for the argument that the commission's power is confined to a change in taxable status of the special franchise is to be found in the final words of the Tax Law (§ 45-c), which integrate the State assessments as ultimately made into the local assessment rolls.

These words are that the valuations as fixed by the Tax Commission and as '' entered by the assessors '' shall '' become a part '' of the local assessment roll '' with the same force and effect as if such assessment had been originally made by such assessors ''. We do not read into these words a limitation of authority of the Tax Commission to determine values. The language merely gives local scope to what the State officers have done. The words '' with the same force and effect '' mean, of course, the legal right to collect a tax after the valuations reach the rolls and the status of the State determinations on the local rolls and not the processes by which the Tax Commission fixes the values. The section heading of section 45-c is '' Certificate of special franchise valuations filed with localities '' and the whole purpose of the section is to provide how the certificate is to be accepted and treated. It certainly ought not to be construed as limiting State power to make the valuations themselves.

Those processes are fully and in detail found in the Tax Law itself; and certainly the language giving local effect to the State determinations could not sensibly be construed to mean that everything a local assessor does about fixing a valuation on real estate must necessarily be done in parallel fashion by the State Commission in fixing a valuation on a special franchise. We think the limitation should be left where the Legislature expressly put it, and treated as a limitation applicable to assessments on real estate and relating only to the power of the local assessing authorities.

It seems rather clear to us that the Administrative Code provision under which some changes in real estate would be reflected in the six-month rolls and changes in value alone not reflected was designed to relieve local assessing authorities of the heavy burden of re-examining all the real estate in the whole tax district for only a six-month period.

The fact that some changes were to be reflected in the tax rolls and others not reflected does not suggest a general legislative principle of rigid freezing of all values for the short period, but rather that the local administrative problem was being considered. The incorporation of changes in physical condition or status of real property into the assessment roll would be a relatively simple task when compared with the reflection of changes in value.

This problem had no reference to the work of the State Tax Commission which was acting under the general requirements of its duty to fix the valuations that would have to be reflected in the special six-month rolls required by the Charter and the code. In order to have these supplemental assessment rolls complete the special franchise assessments as well as the local assessments would have to be included; and in order for them to be included they would have to be made by the State agency under the Tax Law (§ 45).

If the valuations had to be made for this short-term supplemental roll, as we think they had to be, the Tax Commission was required to determine the values as it found them; and nothing in the grant of power to the State agency in this respect suggests that it was required to freeze its previous valuations because some aspects of real estate valuations were to be frozen on local assessments. Not only is the authority to determine values separately derived and entirely different in its exercise, but the subject matter is quite distinct.

That a special franchise is not real estate and that its assessment is a matter of State power and authority and not a local matter was very clearly decided in *People ex rel. Metropolitan St. Ry. Co.* v. *Tax Comrs.* (174 N. Y. 417), a landmark case on the subject. A special franchise was treated by VANN, J., as "this new kind of property, intangible, invisible and elusive, but of great value" (p. 437). The levy upon it was "a new system of taxation", of which the former State Board of Tax Commissioners became the "assessors". (P. 438.) It was the deliberately conceived decision of the State that local assessors should not make the valuations for the newly taxable special franchises for the reasons which Judge VANN discusses with a carefully expressed understanding of the State's policy (pp. 438–440).

To the extent that tangible property was involved at all in the special franchise assessments its part was a mere incident; the essential thing that was being assessed and taxed was the right to use the public property for the business (pp. 440–441). The principles of this leading decision have been consistently confirmed and followed; and certainly nothing decided in *People ex rel. Jamaica Water Supply Co.* v. *State Board of Tax Comrs.* (196 N. Y. 39), which considered only the scope of the power of the Supreme Court on certiorari, disavowed anything decided or said in the *Metropolitan Street Railway* case.

We hold that the statute which froze valuations of real estate, in one phase, in the work of the city assessing officers did not operate to freeze the special franchise valuations to be fixed by the State officers and that the assessments made for the six-month period and reflected in the supplemental rolls for that period are valid.

Having fixed the valuations for the six-month period by its determination of January 30, 1939, the Tax Commission then undertook to make its valuations for the new fiscal year to commence July 1, 1939, and to end June 30, 1940. On May 19, 1939, the Tax Commission gave the company notice that it had made a determination of special franchise valuations and final rate of equalization. This was marked "1939 final". It increased the valuations that had been fixed in the six-month period.

The argument of the Telephone Company that the Tax Commission had no power to make the valuations in May, 1939, to be reflected in the tax rolls for the new fiscal year may be very simply stated. Reading with a heavy emphasis the word "annually" in the Tax Law (§ 45) the company argues that when the

valuations were fixed within the calendar year 1939 by the determination in January of that year the powers of the commission thereby became exhausted until a new calendar year came around.

The words of section 45 (L. 1916, ch. 334), which in context with " annually " read that the " tax commission shall annually fix and determine the full and actual valuation of each special franchise " constitute in function and purpose the imposition of a duty and a grant of power. It is in reference to this recurring obligation, it seems to us, the word " annually " must be read. We would not read " only annually " into the text on the mere warrant of the argument that the company pursues before us; and we would not feel justified in so reading the language in the absence of some more sure signal of legislative intent in that direction than we are able to find in the context.

It makes a hard argument against the reasonable and sensible exercise of public power to say that even when the annual periods to which the State valuations are to be applied become altered by other valid legislative enactment, the function of the State Tax Commission may not be directed to the change of conditions. To carry the company's argument on to the full effect of its own literalism, the Tax Commission could not make evaluations in October of 1939 either, although that month had been the one that had been used when the city had been taxing for the calendar year, because October, as well as May, is in the same case as far as " annually " is concerned in 1939. Hence, the limited area carved out by the exercise of the commission's authority by making the six-month valuations would be perpetuated to renew continued uncertainty and confusion.

We think the word " annually " did not remove from the commission power to adjust its valuations to the new fiscal year fixed by other law and which the commission was thereafter to regard and follow in making its annual valuations.

To say, as it has been said, that the commission must either yield its right to make the six-month valuations or its right to make the first fiscal year valuations is to read the statute as meaning that the two acts are inconsistent and mutually exclusive. But we necessarily assume the valid exercise of the power to make the January, 1939, valuations in order to deal with the question of the further power to make the May, 1939, valuations and we regard both as valid.

That literalism ought not to engulf the recurring power to fix valuations is demonstrated by the practical construction given

by public authorities under chapter 616 of the Laws of 1918, relating to the City of Schenectady. This statute authorized a process extending over some years of gradually moving ahead the month of making local assessments, which resulted in one instance, the year 1924, in the making of two valuations of special franchises by the Tax Commission in one calendar year. A somewhat similar situation existed under Syracuse Local Law No. 7 of 1935. We suppose that this would be the way practical and sensible administrators would make adjustments of State valuations to adjust for changes in local fiscal periods.

The order confirming the assessments should be affirmed, with $50 costs to the respondent and disbursements to the intervener.

FOSTER, P. J., COON, HALPERN and IMRIE, JJ., concur.

Order confirming assessments affirmed, with $50 costs to the respondent and disbursements to intervener. [See *post,* p. 858.]